Filed 3/16/15  P. v. Taylor CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D066125 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. JCF29124) |
| JAMES RANDOLPH TAYLOR, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Imperial County, Donal B. Donnelly, Judge. Affirmed as modified.

Anthony J. Dain, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Julie L. Garland, Assistant Attorney General, Barry Carlton and Seth M. Friedman, Deputy Attorneys General, for Plaintiff and Respondent.

A jury found James Randolph Taylor guilty of one count of continuous sexual abuse upon a child (Pen. Code, § 288.5, subd. (a))[1] and made a true finding that Taylor was previously convicted of committing a lewd act upon a child, which was alleged as a qualifying prior offense for purposes of the Three Strikes law, the One Strike law, and the Habitual Sex Offender law. (§§ 667, subds. (b)-(i), 667.61, subds. (a) & (d), 667.71.) The trial court sentenced Taylor to prison for a term of 55 years to life and, as relevant here, ordered Taylor to pay a $300 restitution fine and a $300 suspended parole revocation restitution fine (§§ 1202.4, subd. (b), 1202.45).

Taylor contends (1) the trial court abused its discretion in overruling an objection asserted on the ground of relevancy during the prosecutor's questioning of Taylor on cross-examination about the charges in his prior molestation case; (2) the prosecutor committed misconduct during closing argument when she described the burden of proof; (3) defense counsel was ineffective because he did not object to the prosecutor's misconduct; and (4) the trial court improperly imposed a restitution fine and a suspended parole revocation restitution fine of $300 each, as the amount for each fine should have been $240. We agree with the People's concession on the last point, but we find no merit to Taylor's remaining arguments. Accordingly, we order the amount of the restitution fine and the suspended parole revocation restitution fine to be modified to $240 each, and as so modified, we affirm the judgment.

---

[1] Unless otherwise indicated, all further statutory references are to the Penal Code.

# I

## FACTUAL AND PROCEDURAL BACKGROUND

In July 2012, a 13-year-old female relative of Taylor (the Child) reported to another adult family member that Taylor had been sexually molesting her.

The police arrested Taylor, and he was charged in the alternative with either three counts of forcible lewd acts upon a child (§ 288, subd. (b)(1)) based on three specific instances of sexual conduct with the Child in 2011 and 2012, or one count of continuous sexual abuse of a child under the age of 14 (§ 288.5, subd. (a))[2] occurring between May 1, 2011 and June 30, 2012. The information also alleged that Taylor had incurred a previous conviction for committing a lewd act upon a child in 1992 (§ 288, subd. (a)), which was alleged to constitute a prior strike under the Three Strikes law (§ 667, subds. (b)-(i)), and to be a prior qualifying offense both for purposes of the One Strike law (§ 667.61, subdivision (d)) and the Habitual Sex Offender law (§ 667.71).

At trial, the Child testified that for several years Taylor had been molesting her two or three times a week in the living room of Taylor's home. According to the Child, on each incident Taylor would take off his clothes, tell the Child to take off her clothes, and then touch the Child's breasts, genitals and buttocks with his hands, and sometimes his tongue, while he masturbated or had the Child masturbate him until he ejaculated.

---

[2] Section 288.5 makes it a crime to engage in three or more acts of substantial sexual conduct, as defined in section 1203.066, or three or more acts of lewd or lascivious conduct as defined in section 288, over a period in excess of three months with a child under the age of 14 with whom the defendant resides or has recurring access. (§ 288.5, subd. (a).)

3

During some of the incidents, pornography was playing on the television. The Child testified that Taylor told her not to disclose the molestation to anyone, and she did not do so because she was afraid that Taylor would hurt her. The Child testified that the last time Taylor molested her, he attempted to have intercourse with her on the kitchen table. The Child refused to have intercourse, and Taylor let her leave the room. Shortly after that incident, at the age of 13, the Child reported the molestation to another adult family member.

At trial, Taylor's two sons, who were 11 and 12 years old, respectively, when the Child disclosed the molestation, testified that they had inadvertently walked into the living room on occasions when Taylor was molesting the Child and witnessed both Taylor and the Child naked and engaging in sexual activity. The sons both also testified that Taylor had warned them not to disclose the molestation, and that the Child had confided in them about the molestation and said that she wanted it to stop.

During motions in limine, the trial court ruled that pursuant to Evidence Code section 1108 it would allow the introduction of evidence about a lewd act that Taylor pled guilty to committing on a seven-year-old female family member in 1992. Accordingly, the victim of the 1992 molestation testified at trial. Specifically, she testified that when sitting in the front passenger seat of a car driven by Taylor, she saw that Taylor's penis was sticking out of his shorts and pointed it out to him. Taylor pulled over the car and asked the girl if she wanted to touch his penis. The girl refused, but Taylor grabbed her hand and placed it on his penis.

4

At trial, the mother of the victim of the 1992 molestation also testified about the relevant events, explaining that the 1992 incident came to light because Taylor disclosed it to her the day it occurred, although in describing the incident to her, Taylor claimed that the girl asked to touch his penis when she saw it sticking out of his shorts. Relevant to the 1992 molestation, during the prosecution's case the trial court also admitted into evidence (1) a certified copy of the complaint in the 1992 case against Taylor, charging him with two counts of committing *forcible* lewd acts upon a child (the 1992 Complaint); and (2) certified court minutes showing that Taylor pled guilty to an amended complaint, charging him with one count of committing a nonforcible lewd act.

Taylor testified in his own defense at trial. He denied molesting the Child and claimed that the allegations may have stemmed from the fact that the Child had inadvertently seen him masturbating in the living room on two occasions while he was watching pornography. Taylor also testified about the 1992 molestation. As he described the incident, the seven-year-old girl voluntarily touched his penis when he asked her whether she wanted to do so after she saw Taylor's penis sticking out of his shorts. According to Taylor, he then asked the girl if he could see her genitals, to which she responded by voluntarily pulling aside her panties.

Presented with the alternative of finding Taylor guilty of either committing three forcible lewd acts upon a child (§ 288, subd. (b)(1)), or committing one count of continuous sexual abuse upon a child (§ 288.5, subd. (a)), the jury found Taylor guilty of committing continuous sexual abuse. The jury also made a true finding that Taylor incurred a conviction for committing a lewd act upon a child in 1992.

5

The trial court imposed a prison sentence of 55 years to life along with a $300 restitution fine and a $300 suspended parole revocation restitution fine (§§ 1202.4, subd. (b), 1202.45).

II

DISCUSSION

A.    *The Trial Court Did Not Prejudicially Err in Overruling the Objection to the Prosecutor's Question About the Charges Against Taylor in the 1992 Complaint*

Taylor's first argument is that the trial court improperly overruled an objection that defense counsel made during the prosecutor's cross-examination of Taylor.

During cross-examination of Taylor, the prosecutor explored the issue of whether, as *Taylor* testified, the victim of the 1992 molestation voluntarily touched his penis, or whether, as *the victim* testified, Taylor grabbed her hand and forcibly placed it on his penis.  In the course of that questioning, the prosecutor asked Taylor about whether the 1992 Complaint charged him with *forcible* lewd acts.  Specifically, immediately after Taylor described the purportedly voluntary nature of the victim's participation in the 1992 molestation, the following exchange took place:

"Q:    So when she said that you forced her to do this, she is lying?

"A:    I didn't threaten her.  I didn't threaten her.  No use of force that I
        remember.

"Q:    Isn't it true that you were charged with two counts of a forcible lewd
        act upon a child?

"[Defense counsel]:  Objection; relevance.

"The Court:  Overruled.  You may answer.

6

"[Taylor]: There was two lewd and lascivious acts with a minor.

"[Defense counsel]: And one of them was for you placing her hand on your penis and one of them was for you touching her vagina; isn't that correct?

"A: There [*sic*] was not clear what each one was. It was just two lewd acts."

Taylor contends that the trial court erred in overruling defense counsel's objection, on the ground of relevancy, to the prosecutor's question about whether Taylor was charged in 1992 with two counts of committing a forcible lewd act. He claims "the nature of the allegations selected by the prosecutor in that prior case had no relevancy to the case at bar."

"A witness may not be examined on matters that are irrelevant to the issues in the case." (*People v. Mayfield* (1997) 14 Cal.4th 668, 755.) In determining whether the trial court erred in sustaining an objection to a question during the examination of a witness made on the grounds of relevancy, we apply an abuse of discretion standard of review. (*People v. Alvarez* (1996) 14 Cal.4th 155, 205 [applying an abuse of discretion standard of review when considering whether the trial court properly sustained an objection to a question during trial examination on the ground that any response would be irrelevant].)

As the Evidence Code establishes, "[r]elevant evidence' means evidence, including evidence relevant to the credibility of a witness or hearsay declarant, having any tendency in reason to prove or disprove any disputed fact that is of consequence to the determination of the action." (*Id.*, § 210.) Taylor concedes that the "facts underlying [the] prior offense were relevant" to the issues presented in this prosecution. We agree. As the trial court explained in deciding to admit the evidence of the 1992 molestation,

7

because of the similarities of that molestation with the allegations against Taylor in this case, the prior molestation was probative on the issue of whether Taylor had the disposition to commit another similar molestation here.[3]

However, Taylor attempts to draw a distinction between the relevance of the *facts* of the 1992 molestation and the relevance of the *charges* alleged in the 1992 Complaint. We reject the distinction. The charges in the 1992 Complaint are relevant because they tend to support the credibility of the victim's memory of the molestation as consistent with what she told authorities in 1992. The fact that the 1992 Complaint charged Taylor with forcible lewd acts supports an inference that the victim gave evidence to authorities at the time of the molestation in 1992 describing *forcible* lewd acts. The charges in the 1992 Complaint therefore have some relevance to the disputed factual issue in *this case* of whether the victim accurately testified many years later about the incident, describing the incident as Taylor's *forcible* act of placing her hand on his penis.[4]

---

[3]     As permitted by Evidence Code section 1108, the trial court admitted the evidence of the 1992 molestation as prior conduct which showed Taylor's disposition to commit another similar molestation. Evidence Code section 1108, subdivision (a) provides that in a sex crime prosecution, evidence of the defendant's commission of another sexual offense is not made inadmissible by Evidence Code section 1101's bar on the admission of character evidence to prove conduct on a specified occasion.

[4]     Taylor cites *People v. Willard* (2007) 154 Cal.App.4th 1329, 1335, to argue that the allegations of the 1992 Complaint are irrelevant because they do not constitute evidence of the 1992 molestation. However, *Willard* is inapplicable, as it deals with whether factual corroboration for a guilty plea may be based solely on the factually bare contents of the specific criminal complaint against the defendant, which is not the issue presented here.

8

"The permissible scope of cross-examination of a defendant is generally broad. 'When a defendant voluntarily testifies, the district attorney may fully amplify his testimony by inquiring into the facts and circumstances surrounding his assertions, or by introducing evidence through cross-examination which explains or refutes his statements or the inferences which may necessarily be drawn from them.' " (*People v. Chatman* (2006) 38 Cal.4th 344, 382.) Here, the prosecutor's question about the charges in the 1992 Complaint was permissible because it was aimed at "fully amplify[ing]" Taylor's testimony about the details of the 1992 molestation through questioning about the charges in the 1992 Complaint that lent support to the credibility of the victim's trial testimony about how the molestation occurred. (*Ibid*.) The trial court was accordingly well within its discretion to overrule defense counsel's objection to the question.

Moreover, even were Taylor to establish that it was error for the trial court to overrule the objection, any error would be harmless. (*People v. Fuiava* (2012) 53 Cal.4th 622, 671 [even assuming testimony should have been excluded as irrelevant, any error was harmless because there was no reasonable probability the jury would have reached a more favorable verdict had the trial court sustained the objection].) Taylor contends the objection should have been sustained because the prosecutor was attempting to put irrelevant information before the jury about the charges in the 1992 Complaint, and it harmed his case for the jury to know that he was charged with forcible lewd acts in 1992. However, at the time of Taylor's testimony, the 1992 Complaint *had already been*

9

*admitted into evidence*.[5]  Indeed, during closing argument, the prosecutor specifically drew the jury's attention to the certified copy of the 1992 Complaint that the trial court had admitted into evidence, explaining that Taylor had been charged in 1992 with two counts of forcible lewd acts upon a child, although he eventually pled guilty to one count of a nonforcible lewd act.  Because the 1992 Complaint was already before the jury and the prosecutor specifically drew the jury's attention to that document at closing argument, Taylor cannot establish that it is reasonably probable that he would have obtained a more favorable verdict had the trial court sustained the objection to the prosecutor's question about the 1992 Complaint during cross-examination of Taylor.

B.      *Taylor Has Forfeited His Claim of Prosecutorial Misconduct*

We next consider Taylor's contention that the prosecutor committed misconduct during closing argument by incorrectly describing the burden of proof.

" 'The standards governing review of [prosecutorial] misconduct claims are settled.  "A prosecutor who uses deceptive or reprehensible methods to persuade the jury commits misconduct, and such actions require reversal under the federal Constitution when they

---

[5]      Although defense counsel asserted an objection to some of the documentation relating to the 1992 molestation, contending that foundation as to authenticity was lacking and that probation officer reports were not relevant, he did not object to admitting the 1992 Complaint into evidence on any ground, including lack of relevance.  We note that Taylor argues on appeal that he should not have been required to make a *subsequent* objection to the introduction of the 1992 Complaint on the basis of relevancy after already having made that objection during Taylor's testimony.  However, this argument fails because it is based on an incorrect understanding of the order of events at trial.  As we have explained, the certified copy of the 1992 Complaint had *already* been admitted into evidence at the time of Taylor's testimony, without objection.

10

infect the trial with such ' "unfairness as to make the resulting conviction a denial of due process." ' [Citations.] Under state law, a prosecutor who uses such methods commits misconduct even when those actions do not result in a fundamentally unfair trial." ' [Citation.] [¶] ' "As a general rule a defendant may not complain on appeal of prosecutorial misconduct unless in a timely fashion—and on the same ground—the defendant made an assignment of misconduct and requested that the jury be admonished to disregard the impropriety." ' " (*People v. Hajek* (2014) 58 Cal.4th 1144, 1238 (*Hajek*).)

As the basis for his prosecutorial misconduct claim, Taylor points to the following statement made during the prosecutor's closing argument:

> "Beyond a reasonable doubt is not proof beyond all doubt. It is proof that leaves you with an abiding conviction the charge is true. *Abiding means lasting, conviction, belief. So a lasting belief the charge is true. Now, the defense is going to get up here and tell you that, you know, this is such a high standard.* It's a really tough burden that I can never ever meet. Well, we meet it in courtrooms every single day. This is not an impossible burden. So it's something that — as long as the evidence leaves you with a lasting conviction the charge is true, you can convict." (Italics added.)

Focusing on the italicized portion of the prosecutor's statement, Taylor claims that the prosecutor committed misconduct by "impermissibly diminish[ing] the proof beyond a reasonable doubt standard and undermin[ing] the presumption of innocence." Specifically, Taylor argues that (1) "lasting belief " is not an accurate synonym for the phrase "abiding conviction," which appears in the jury instructions on reasonable doubt; and (2) the prosecutor improperly suggested that the reasonable doubt standard is not "such a high standard."

11

Without reaching the merits of Taylor's prosecutorial misconduct argument, we conclude that the argument has been forfeited. As we have explained, a defendant may generally not complain on appeal of prosecutorial misconduct unless he has timely objected and requested that the jury be admonished. (*Hajek*, *supra*, 58 Cal.4th at p. 1238.) Here, defense counsel did not object to the prosecutor's statements about the burden of proof during closing argument, and made no request that the jury be admonished. Although the "defendant's failure to object will be excused if an objection would have been futile or if an admonition would not have cured the harm caused by the misconduct" (*People v. Centeno* (2014) 60 Cal.4th 659, 674), Taylor makes no attempt to argue that an objection or admonition would have been futile. Indeed, as our Supreme Court recently pointed out in a similar context, "[a] prosecutor's misstatements of law are generally curable by an admonition from the court." (*Ibid*.) We therefore conclude that Taylor may not pursue the issue of prosecutorial misconduct on appeal because the issue has been forfeited.

C.     *Taylor Has Failed to Establish That Counsel Was Ineffective for Failing to Object to the Alleged Prosecutorial Misconduct*

Acknowledging that defense counsel may have forfeited the prosecutorial misconduct argument by not objecting during closing argument, Taylor contends that defense counsel was ineffective for failing to object.

"A defendant whose counsel did not object at trial to alleged prosecutorial misconduct can argue on appeal that counsel's inaction violated the defendant's constitutional right to the effective assistance of counsel. The appellate record, however,

12

rarely shows that the failure to object was the result of counsel's incompetence; generally, such claims are more appropriately litigated on habeas corpus, which allows for an evidentiary hearing where the reasons for defense counsel's actions or omissions can be explored. (*People v. Lopez* (2008) 42 Cal.4th 960, 966.)

"Under both the Sixth Amendment to the United States Constitution and article I, section 15, of the California Constitution, a criminal defendant has the right to the assistance of counsel." (*People v. Ledesma* (1987) 43 Cal.3d 171, 215.) A defendant claiming ineffective assistance of counsel has the burden to show: (1) counsel's performance was deficient, falling below an objective standard of reasonableness under prevailing professional norms; and (2) the deficient performance resulted in prejudice. (*Strickland v. Washington* (1984) 466 U.S. 668, 687; *Ledesma*, at pp. 216, 218.) Prejudice is shown when "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." (*Strickland*, at p. 694.)

Further, as is important here, "[r]eviewing courts reverse convictions on direct appeal on the ground of incompetence of counsel only if the record on appeal demonstrates there could be no rational tactical purpose for counsel's omissions." (*People v. Lucas* (1995) 12 Cal.4th 415, 442; see *People v. Anderson* (2001) 25 Cal.4th 543, 569.) "In the usual case, where counsel's trial tactics or strategic reasons for challenged decisions do not appear on the record, we will not find ineffective assistance

of counsel on appeal unless there could be no conceivable reason for counsel's acts or omissions." (*People v. Weaver* (2001) 26 Cal.4th 876, 926.)

Taylor has not established that defense counsel performed below the standard of care by failing to object to the prosecutor's statements, as defense counsel could reasonably have determined that the statements were not objectionable. Taylor's first contention is that defense counsel should have objected when the prosecutor suggested that "lasting belief" is a synonym for the phrase "abiding conviction." However, defense counsel could reasonably have decided that the prosecutor's statement was proper based on case law that acknowledges that the term "abiding" is often equivalent to the term "lasting." (*People v. Haynes* (1998) 61 Cal.App.4th 1282, 1299 [in the context of discussing the jury instruction on reasonable doubt, explaining that " '[a]biding' may commonly mean lasting or enduring"]; *People v. Light* (1996) 44 Cal.App.4th 879, 885 [" 'abiding conviction' " conveys "the requirement that the jurors' belief in the truth of the charge must be both long lasting and deeply felt"].) Taylor's second contention is defense counsel should have objected when the prosecutor purportedly suggested that the reasonable doubt standard is not "such a high standard." However, Taylor's argument depends on a mischaracterization of the prosecutor's statement. When read in whole, the substance of the prosecutor's comment was that the reasonable doubt standard was not "such a high standard" that it was "an impossible burden." Defense counsel could reasonably have concluded that because the reasonable doubt standard is not an *impossible* burden the prosecutor's statement was an accurate reflection of the law and thus was not objectionable.

Further, as we have explained, we will reverse on the ground of ineffective assistance of counsel " 'only if the record on appeal affirmatively discloses that counsel had no rational tactical purpose for his act or omission.' "  (*People v. Zapien* (1993) 4 Cal.4th 929, 980.)  Here, even if defense counsel believed there was anything objectionable about the prosecutor's statements, he could have made the reasonable tactical decision to use his own closing argument to address any misleading statements by the prosecutor about reasonable doubt rather than objecting.  Indeed, defense counsel spent a significant portion of his closing argument addressing the concept of reasonable doubt, specifically referring back to the prosecutor's comments on the issue and using them to segue into his own explanation of the burden of proof.[6]

Based on the above, we conclude that Taylor has failed to establish ineffective assistance of counsel as a ground for reversal.

D.    *The Restitution Fine and the Suspended Parole Restitution Revocation Fine Were Improperly Calculated*

At the May 30, 2014 sentencing hearing, the trial court imposed a restitution fine in the amount of $300.  (§ 1202.4, subd. (b).)  It also imposed a parole revocation restitution fine in the same amount, which it suspended (§ 1202.45).

Taylor contends, and the People agree, that because the trial court indicated that it intended to impose the statutory minimum restitution fine, it should have set the fines in

---

[6]    For example, referring specifically to the prosecutor's statement about the burden of proof, defense counsel stated during closing argument, "[the prosecutor] says that I am arguing to you that that burden of proof is impossible.  No.  It's not impossible . . . ."

15

the amount of $240 each, which was the statutorily provided minimum fine at the time Taylor committed the offense, instead of $300, which was the statutorily provided minimum fine at the time of sentencing.  (§ 1202.4, subd. (b).)  As we will explain, we agree with the parties.

Section 1202.4, subdivision (b)(1) provides for a restitution fine in an amount set at the discretion of the trial court "commensurate with the seriousness of the offense," but states that, except in extraordinary circumstances, the fine must be no less than a minimum amount set by statute.  Here, the trial court indicated at sentencing that it was imposing the "*minimum* mandatory . . . restitution fine" of $300.  (Italics added.)  Further, as the parole revocation restitution fine in section 1202.45 was required to be in the same amount as the restitution fine imposed under section 1202.4, subdivision (b) (§ 1202.45, subd. (a)), the trial court also selected $300 for the amount of the parole revocation restitution fine.

The relevant statutory minimum fine is specified in section 1202.4, subdivision (b)(1).  "If the person is convicted of a felony, the fine shall not be less than two hundred forty dollars ($240) starting on January 1, 2012, two hundred eighty dollars ($280) starting on January 1, 2013, and three hundred dollars ($300) starting on January 1, 2014 . . . ."  (*Ibid.*)

"A restitution fine qualifies as punishment for purposes of the prohibition against ex post facto laws."  (*People v. Saelee* (1995) 35 Cal.App.4th 27, 30.)  Thus, to avoid violation of the ex post facto laws, when calculating the applicable minimum amount of a restitution fine, the trial court must look to the fine authorized *as of the date of the*

16

*offense*, not the date of sentencing. (*People v. Valenzuela* (2009) 172 Cal.App.4th 1246, 1248 (*Valenzuela*); *People v. Martinez* (2014) 226 Cal.App.4th 1169, 1190 (*Martinez*).)

Here, section 1202.4, subdivision (b)(1) provides that the minimum restitution fine applicable at the time Taylor committed the last act of the continuing sexual abuse in June of 2012 was $240. Accordingly, in setting the restitution fine at the statutory minimum, the trial court should have specified the amount of $240, not $300. Further, as section 1202.45, subdivision (a) requires that the parole revocation restitution fine be in the same amount as the restitution fine imposed under section 1202.4, subdivision (b)(1), the trial court also should have specified the amount of $240 for the parole revocation restitution fine. (See *Martinez*, *supra*, 226 Cal.App.4th at p. 1190 [ordering that the parole revocation restitution fine be modified to be set at the same amount as the modified amount of the restitution fine].)

Although defense counsel did not object to the amount of the restitution fine and parole revocation restitution fine, we have the discretion to modify the judgment to correct the sentence (see *Valenzuela*, *supra*, 172 Cal.App.4th at pp. 1248-1249), and the People agree that we should do so. We accordingly will order that judgment be modified to reduce the restitution fine imposed under section 1202.4, subdivision (b)(1) to $240, and to reduce the suspended parole revocation restitution fine to $240 as well (§ 1202.45).

## DISPOSITION

The judgment is modified by reducing the restitution fine and the parole revocation restitution fine to $240 each. As modified, the judgment is affirmed. The trial

17

court is directed to amend the abstract of judgment accordingly and forward a copy of the amended abstract of judgment to the Department of Corrections and Rehabilitation.

IRION, J.

WE CONCUR:

HALLER, Acting P. J.

AARON, J.